IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **ROBERT LYNN JONES,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:23-cv-00102-O-BP |
| § | |
| **COMMISSIONER OF** § | |
| **SOCIAL SECURITY,** § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Robert Lynn Jones ("Jones") applied for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied his application, deciding that he was not disabled. Jones appealed, but the Social Security Appeals Council ("AC") rejected his request for review. There is no reversible error in the legal standard that the Administrative Law Judge ("ALJ") applied, and substantial evidence supports his determination that Jones was not disabled. Accordingly, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's denial of Jones' application and **DISMISS** this case with prejudice.

**I.   BACKGROUND**

Jones applied for DIB on January 29, 2021. Soc. Sec. Admin. R. (hereinafter "Tr.") ECF No. 8-1 at 219-25. Jones alleged disability beginning on January 4, 2021, due to the combined effects of hearing loss, poor balance, and torn cartilage in his right knee. *Id*. at 260. The Commissioner denied his application initially and upon reconsideration. Tr. 69, 70.

Jones challenged the Commissioner's denial in a hearing before an ALJ, who affirmed the Commissioner's decision. *Id*. at 14-23. Jones appealed the decision to the AC, which denied review. *Id*. at 1. "[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Jones then filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## II.    STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id*. § 404.1520(a)(4)(i). "Substantial gainful activity" ("SGA") is work that "involves doing significant physical or mental activities" for pay or profit. *Id*. § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id*. § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. See *id*. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). See *id*. § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [his] limitations," *id*. § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial

2

gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id*. § 404.1560(b)(1).

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id*. § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id*. § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id*. (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully

scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.  ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process. Tr. 20-27. First, the ALJ found that Jones had not engaged in SGA since his alleged onset date of January 4, 2021. *Id*. at 20. Second, he found three severe impairments: "hearing loss in the right ear, bilateral knee arthritis, and left shoulder impingement." *Id*. at 20-21. He also found that Jones "suffer[ed] from obesity," based on a 2021 examination revealing a body mass index of 38.28 kg/m$^2$. *Id*. at 21. He determined that these impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28," but that "the claimant's obesity did not impose limitations on his functioning to rise to the level of a severe impairment." *Id*.

Third, the ALJ identified no impairment or combination of impairments that qualified under the federal regulatory list. Tr. 21 As for Jones' knee and shoulder impairments, the ALJ found that Jones "was not prescribed the use of the types of assistive devices outlined in the Listing, and he maintained intact fine and gross motor skills." *Id*. As for Jones' hearing loss, the ALJ found that "the audiogram administered in May 2020 did not establish that [he] had the air conduction, bone conduction, or word recognition scores to meet the criteria outlined in the Listing." *Id*.

The ALJ then assessed Jones' RFC, concluding:

> that the claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except he could frequently climb ramps and stairs, never climb ladders, ropes or scaffolding, occasionally balance, kneel, crouch and crawl and frequently stoop. He could occasionally reach overhead with the left upper extremity, and he

>would need to work in an environment with a moderate or lower noise level.

*Id*.

At step four, the ALJ determined that Jones could perform past relevant work as a quality control inspector and glass cutoff supervisor as these jobs are generally performed in the national economy. *Id*. at 24. The ALJ found that both jobs were "of sufficient recency, earnings, and duration to be deemed the claimant's past relevant work." *Id*. To support his conclusion that Jones could perform past work as generally performed, the ALJ explained that he had considered testimony from vocational expert ("VE") Teri Hewitt "in light of the principles outlined in Social Security Ruling 00-4p." *Id*. at 25.

The ALJ also made a step five finding in the alternative, explaining that "in addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, and [RFC]." *Id*. The ALJ explained that if Jones could perform the full range of medium work, this would lead to a finding of "not disabled." *Id*. at 26. But the ALJ then explained that even though Jones' ability to perform the full range of medium work was "impeded by additional limitations," the VE had testified that there were still jobs existing in significant numbers in the national economy that Jones could perform, namely, the jobs of dishwasher, warehouse worker, and handpackager. *Id*.

Jones' central argument is that "[t]he ALJ failed to account for the 'total limiting effects' of [Jones'] impairments." ECF No. 12 at 3. Specifically, "[t]he ALJ improperly discredited [Jones'] subjective statements without performing the required analysis and with no acknowledgment, let alone analysis, of the consistency between his testimony and the other evidence, including an opinion by Dr. Sambhariya." *Id*. at 4. "This is not harmless because this

5

evidence patently supports greater limitations and there is no vocational testimony regarding the vocational impact of the limitations [Jones] described." *Id*. Jones argues that because these greater limitations would limit him to light work or less, he cannot perform his past jobs and is considered disabled under the SSA "grid rules." *Id*. at 4-5.

In response, the Commissioner argues that the ALJ "considered all [of Jones'] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and as a result, the ALJ found that "[Jones'] statements concerning the intensity, persistence and limiting effects of his symptoms was not entirely consistent with the medical evidence and other evidence in the record." ECF No. 15 at 6. As to the medical opinion, the Commissioner asserts that "contrary to [Jones'] claims, Dr. Sambhariya's opinion does not support his claims that he could not perform a range of medium work with limitations." *Id*. Finally, the Commissioner states that in the Fifth Circuit, an ALJ is not legally obligated to consider a claimant's work history on the issue of credibility, and Jones did not show reversible error on this point. *Id*. at 10.

### A. Substantial evidence supports the ALJ's findings related to Jones' impairments and lack of disability.

The ALJ evaluates a claimant's subjective complaints using a two-part process. *Salazar v. Chater*, 74 F.3d 1236, 1995 WL 783347, at *1 (5th Cir. 1995) (citing 20 C.F.R. § 404.1529). First, "medical signs or laboratory findings" must show the claimant has a "medically determinable impairment that could reasonably be expected to produce [his] symptoms." 20 C.F.R. § 404.1529(b). Second, the ALJ must "evaluate the intensity and persistence of [his] symptoms so that [he] can determine how [his] symptoms limit [his] capacity for work." *Id*. § 404.1529(c)(1). Jones explains that the ALJ found in his favor at the first step. ECF No. 12 at 8. The ALJ did not find in Jones' favor at the second step.

Jones then asserts that consultative examiner Varun Sambhariya, M.D. (relevant to the first step) supports Jones' descriptions of his mobility issues (relevant to the second step). ECF No. 12 at 9. Jones argues that taken together, "Dr. Sambhariya's opinion and [Jones'] testimony establish greater limitations than the RFC and establish that he is 'disabled.'" *Id*. Specifically, "Dr. Sambhariya's opinion and [Jones'] testimony flatly contradict the ALJ's finding that he can stand/walk approximately 6 hours per day on a regular and continuous basis (i.e., the ALJ's RFC for medium work, § 404.1567(c); SSR 83-10))." *Id*.

Jones provides two arguments for why this is the case. He first argues that "these limitations demonstrate his inability to engage in sustained, full-time employment." *Id*. Second, he asserts that his "standing/walking limitations not only preclude medium work, they are consistent only with the ability to perform sedentary jobs . . . ." ECF No. 12 at 10. Jones maintains that since his maximum capacity is to perform sedentary work, he should receive a determination of "disabled" due to the additional factors of age, education, and prior work experience, according to 20 C.F.R. Part 404, Subpart P, App'x 2, § 201.06. *Id*. Jones argues in the alternative that even if he were able to perform light exertional work, the same result would hold. *Id*.

While the ALJ considered such limitations, he found the State Agency medical consultants' opinion regarding Jones' ability to perform a reduced range of medium work to be persuasive. Tr. 20, 64, 77. The ALJ relied on such findings, while also considering Jones' ability to walk independently, "full muscle strength and intact manipulative abilities in his upper extremities," and "the effectiveness of [Jones'] chiropractic treatment." TR. 20. After consideration, he concluded that Jones' limitations reflected in the objective medical record did not support his allegations that he was disabled. Tr. 22. He concluded that Jones was able to perform medium exertion level work with certain limitations, such as limited overhead reaching. *Id.* at 18. The ALJ

7

properly exercised his responsibility as fact finder to weigh the evidence and incorporate limitations in his RFC assessment that the record supported. *Audler,* 501 F.3d at 447.

Jones also claims that "[t]he ALJ did not reasonably and/or logically reject Dr. Sambhariya's opinion." ECF No. 12 at 11. He explains that "[t]he ALJ rejected Dr. Sambhariya's opin[ion] because (1) it does not quantify the claimant's limits in functional terms, and (2) it is inconsistent with other evidence, specifically imaging and Plaintiff's ability to walk independently." *Id*.

An ALJ is free to reject any medical opinion when the evidence supports a contrary conclusion. *Qualls* v. *Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009) (quoting *Bradley* v. *Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)); *see also Harris*, 209 F.3d at 417. An ALJ may even completely disregard the opinion of a treating physician. *See Brown*, 192 F.3d at 500.

Regardless of whether an ALJ accepts or rejects a medical opinion, he must "articulate in his determination or decision how persuasive he find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b); *see also Guy v. Comm'r of Soc. Sec.*, No. 4:20-cv-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022), *rec. adopted* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022). The articulation requirement is to "allow a subsequent reviewer or reviewing court to trace the path of an [ALJ]'s reasoning." 82 Fed. Reg. 5858 (Jan. 18, 2017). This requirement is obligatory for claims filed on or after March 27, 2017. *Id.* Jones applied for DIB on January 29, 2021, and is, therefore, entitled to the explanation. Tr. 215.

While ALJs need not exhaustively recount their reasoning, they must "explain how [they] considered the supportability and consistency factors for . . . medical opinions . . . in [a claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(2). Mere evidentiary summaries fall short of § 404.1520c's requirements, as evidenced in the plain meaning of the regulatory text. *Id.* ALJs

consider five factors when evaluating medical opinions, and they must explain how they considered the two "most important factors," supportability and consistency. *Id*.

Determining supportability and consistency "involve different analyses and require the ALJ to explain his reasoning for his persuasiveness finding with respect to each factor." *Linda M. v. Comm'r, Soc. Sec. Admin.*, No. 3:21-CV-210-BK, 2022 WL 4125095, at *3 (N.D. Tex. Sept. 8, 2022) (quoting *Kilby v. Kijakazi*, No. 4:20-cv-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)). While "supportability" measures the degree of relatedness between a medical provider's opinion and the medical evidence he provides to support that opinion, "consistency" is "an all-encompassing inquiry" that focuses on "how well a medical source is supported, or not supported, by the entire record." *Id.* (emphasis removed); *See* 20 C.F.R. §§ 404.1520c(c)(1), (2).

The ALJ evaluated Dr. Sambhariya's opinion at step four. Tr. 17-20. In his decision, the ALJ explained why he found Dr. Sambhariya's testimony to be unpersuasive:

> He did not quantify the claimant's limitations in functional terms. Also, his finding on the claimant's difficulty with lifting objects was not supported by the imaging report establishing that he had no defects or abnormalities to his left shoulder and mild osteoarthritis in his knees (Exhibit 4F/9). The claimant also consistently walked independently with a normal gait despite his knee impairment to establish that he could still walk on a prolonged basis (Exhibits 4F/5; 6F/1).

Tr. 20. The ALJ articulated his reasons for rejecting Dr. Sambhariya's opinion sufficiently to permit judicial review, considering both the supportability and consistency of the opinion in light of other evidence in the record. Accordingly, the ALJ in his broad discretion properly rejected Dr. Sambhariya's opinion.

Because "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve," the Court will not second guess the ALJ's determination of the weight to be afforded Dr. Sambhariya's opinion compared to the rest of the evidentiary record. *See Brown*, 192 F.3d at 496. Considering the clarity of the ALJ's explanation and the degree to which he supported his

9

conclusion with references to specific evidence in the record, substantial evidence supports the Commissioner's conclusion, and reversal is not required.

> **B.    The ALJ properly credited Jones' testimony and evaluated Jones' work history in assessing his credibility.**

Jones further argues that the ALJ erred in not considering Jones' testimony and "exemplary work history" as a "highly relevant credibility factor." ECF No. 12 at 15, 16. Stressing that he worked the last forty-two years consecutively without interruption up until the onset of his disability in 2021, Jones argues that the ALJ should have taken this into consideration in evaluating his credibility. *Id*. Although Jones acknowledges that courts afford deference to an ALJ's credibility determinations, he cites to 20 C.F.R. § 404.1529(c)(3), SSRs 96-8p and 16-3p, and several cases in support of his contention that a claimant with a good work history should be viewed as particularly credible. *Id.*

SSR 96-8P identifies "[e]vidence from attempts to work" as a factor to consider in determining a claimant's RFC, and the regulations provide that the ALJ "will consider all of the evidence presented, including information about your prior work record." SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. Jul. 2, 1996); 20 C.F.R. § 404.1529(c)(3). Additionally, three out-of-circuit decisions note that evidence of a strong work history bolsters a claimant's credibility. *See, e.g.*, *Taybron v. Harris*, 667 F.2d 412, n.6 (3d Cir. 1981); *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983); and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

But in the Fifth Circuit, an ALJ need not consider a claimant's lengthy work history as evidence of his credibility. *Sanchez v. Berryhill*, No. CV M-16-030, 2017 WL 2117526, at *9 (S.D. Tex. Mar. 31, 2017), *rec. and recommendation adopted*, No. 7:16-CV-30, 2017 WL 2080239 (S.D. Tex. May 15, 2017) (the Fifth Circuit does recognize a "rule" that a claimant with a good work history is entitled to substantial credibility); *McGee v. Astrue*, No. 2:10-CV-1826, 2012 WL

7456174, at *8 (W.D. La. Nov. 26, 2012), *rec. and recommendation adopted*, No. 2:10-CV-1826, 2013 WL 704624 (W.D. La. Feb. 26, 2013) (ALJ did not err in failing to consider plaintiff's long work history when assessing credibility because "a claimant's work history is but one factor to consider when evaluating plaintiff's symptoms").

Jones cites other cases in this circuit, but they do not reach a contrary conclusion. In *Roberson v. Colvin*, the Court found that "while it would have been better for the ALJ to acknowledge plaintiff's 30-year consistent work history, the failure to reference such in his findings d[id] not mean he was not aware of the history" and that "[n]o reversible error ha[d] been shown." No. 2:13-CV-197, 2015 WL 1408925, at *7-8 (N.D. Tex. Mar. 27, 2015). Likewise, in *Lorah v. Comm'r of Soc. Sec.*, the court held that even "assuming that the ALJ had afforded claimant an extra measure of credibility because she was a good and faithful employee, the ALJ would remain justified in finding that she is not disabled…." CIV. A. No. 14-0749, 2015 WL 4395351, at *7 (W.D. La. July. 16, 2015).

In assessing Jones' statements regarding the intensity, persistence, and limiting effects of his symptoms, the ALJ specifically stated that he considered all symptoms and that "the claimant's statements… are not entirely consistent with the medical evidence and other evidence in the record." Tr. 20. The ALJ further considered that "[t]he claimant can also successfully complete a wide range of daily activities like mowing his yard, completing house repairs, shopping, and driving." *Id*. Jones has failed to provide any reason to question the ALJ's statements, nor has he shown that a consideration of his work history as a separate item might have led to a different result.

Moreover, it is not reversible error when the ALJ fails to consider the claimant's work history to determine credibility as the Fifth Circuit has held that any such error would be harmless.

*See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). "The ALJ is in the best position to make such determinations of credibility based on the full record of evidence and live testimony, and he need not explain every piece of evidence." *Benton ex rel. Benton v. Astrue*, No. 3:12-CV-0874-D, 2012 WL 5451819, at *7 (N.D. Tex. Nov. 8, 2012) (citing *Falco*, 27 F.3d at 163). Here, the ALJ exercised his discretion to consider other factors besides Jones' work history to determine whether Jones was disabled, and work history is not a determinative factor. Under these circumstances, the ALJ did not commit reversible error by failing to specifically discuss Jones' work history in his findings and properly credited Jones' testimony as a whole.

  **C.**  **The ALJ applied the correct legal standards at step five.**

While Jones does not directly attack the ALJ's conclusions at step five, he does question the ALJ's use of the VE's determination. ECF No. 12 at 5. Thus, the undersigned will address Jones' concerns relating to step five. To be disabling, an impairment must prevent a claimant from obtaining gainful employment considering his RFC, age, work experience, and education. 20 C.F.R. § 404.1520(a)(4)(v). To find a claimant not disabled, the Commissioner must show that there is a "significant number of jobs" available for the claimant within the national economy. *Crowley*, 197 F.3d at 197-98.

Neither this Court nor the Fifth Circuit has endorsed a bright-line rule for what constitutes a "significant" number of jobs. *See, e.g.*, *Jackson v. Berryhill*, 2017 WL 4457539, at *3 (N.D. Tex. Sept. 11, 2017), *rec. and recommendation adopted*, 2017 WL 4410812 (N.D. Tex. Oct. 3, 2017) ("The Court of Appeals for the Fifth Circuit has not, in a published opinion, determined what constitutes a 'significant number' of jobs."); *Dominguez v. Astrue*, 286 F. App'x 182, 188 (5th Cir. 2008) (describing the analysis as based on "common-sense"). Here, the ALJ relied on the VE's

testimony in concluding that Jones could perform a significant number of jobs, referencing three different positions that collectively represent 545,000 available jobs in the national economy. Tr. 22; *see also* 20 C.F.R. § 416.966(e) (noting ALJs may rely on VE testimony when making this determination).

In reaching his "significant jobs" conclusion, the ALJ relied on expert testimony and other evidence of record, explaining that a person with Jones' RFC "would be able to perform the requirements of representative occupations at a Medium exertional level such as a Dishwasher, DOT # 318.687-010, with 400,000 jobs existing nationally, as a Warehouse worker, DOT # 322.687-058, with 100,000 jobs existing nationally, and as a Handpackager, DOT # 920.587-018, with 45,000 jobs existing nationally." Tr. 22. While Jones insists that "there is no vocational testimony regarding the vocational impact of the limitations [Jones] described," ECF No. 12 at 4, the ALJ specifically inquired as to how certain of Jones' conditions would prohibit him from performing not only other jobs available in the national economy, but also Jones' past relevant work. Tr. 49-51.

Because the ALJ did not accept the VE's conclusions at face value, but inquired further as to why someone with Jones' limitations might be precluded from working certain jobs, he applied correct legal standards and did not err as Jones suggests. *See Carey v. Apfel*, 230 F.3d 131, 140 (5th Cir. 2000) (affirming where "the ALJ prudently asked the [VE] to directly address the effect of [the claimant's] condition on his ability to perform the identified jobs"). Considering the ALJ conducted the appropriate step-five analysis, relied on expert testimony and the evidentiary record as a whole, and explained his findings robustly, he applied the correct legal standard.

### D. Substantial evidence supports the ALJ's step-five determination.

Having established that the ALJ applied the correct legal standard to the step-five analysis, the Court must determine whether substantial evidence supports the ALJ's conclusions. *See Boyd*, 239 F.3d at 704. Courts find substantial evidence where "a reasonable mind" could accept the evidentiary record "to support [the Commissioner's] conclusion." *Ripley*, 67 F.3d at 555. Given the ALJ's findings, and the substantial number of jobs available in the national economy available for persons with limitation such as those Jones possessed, a reasonable mind could accept the evidence presented and the ALJ's conclusion that significant numbers of jobs exist that Jones could perform.

Jones does not directly question the finding of substantial evidence for step five, but he does assert that the hypothetical questions posed to the VEs were not proper. Jones asserts that "an RFC finding/concomitant hypothetical assumption to the VE that inaccurately describes the practical effects of the claimant's impairments is contrary to law, and the VE's response to such a hypothetical is not substantial evidence supporting an ALJ denial." ECF No. 12 at 10. Jones does not show specific insufficiencies in the ALJ's data, the VE's testimony, or the hypotheticals given to the VE. Nor does he point to other evidence in the record suggesting that he cannot perform the referenced jobs or other similar positions. Jones merely asserts that his limitations are greater than reflected in the RFC, seemingly showing that the VE's decision is insufficient because the RFC was incorrect.

However, the ALJ made the RFC finding based on both medical and personal testimony, and further made the step-five determination based on the testimony of a VE as stated above. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices . . . support the decision." *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417). Substantial evidence

supports the ALJ's determination that 545,000 jobs were available in the national economy that Jones could perform. This is far more than an ample number of jobs that are available. Under these circumstances, Judge O'Connor should affirm the Commissioner's decision.

## IV. CONCLUSION

Because the ALJ employed the proper legal standard and substantial evidence in the record supports his conclusion, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on October 25, 2024.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

15